JOSEPH BATTIN, PATENTEE, AND SAMUEL BATTIN, ASSIGNEE, PLAINTIFFS IN ERROR, *v.* JAMES TAGGERT, DEFENDANT IN ERROR. JOSEPH BATTIN, PATENTEE, AND SAMUEL BATTIN, ASSIGNEE, PLAINTIFFS IN ERROR, *v.* ROBERT RADCLIFFE AND JOHN JOHNSON, DEFENDANTS IN ERROR. JOSEPH BATTIN, PATENTEE, AND SAMUEL BATTIN, ASSIGNEE, PLAINTIFFS IN ERROR, *v.* JOHN G. HEWES, DEFENDANT IN ERROR.

Whether the defect be in the specifications or in the claim of a patent, the patentee may surrender it, and, by an amended specification or claim, cure the defect.

When this is done, and a reissued and corrected patent is taken out, the omissions and defects are cured; and nothing within the scope of the patentee's original invention can be considered as having been dedicated to the public, by the lapse of time between the original and reissued patent.

Hence, where a patent was taken out for a new and useful improvement in the machine for breaking and screening coal, and the claim was for the manner in which the party had arranged and combined with each other the breaking rollers and the screen; and the amended specification of the reissued patent described essentially the same machine as the former one did, but claimed, as the thing invented, the breaking apparatus only, a dedication to the public did not accrue in the interval between the one patent and the other.

It was for the jury to determine, from the facts in the case, whether the specifications, including the claim, were so precise as to enable any person skilled in the structure of machines, to make the one described; also, to judge of the novelty of the invention, and whether the renewed patent was for the same invention as the original patent; also, whether the invention had been abandoned to the public. The jury were also to judge of the identity of the machine used by the defendant, with that of the plaintiffs, or whether they have been constructed and act on the same principle.

THESE three cases were argued and decided together. They were brought up, by writ of error, from the circuit court of the United States for the eastern district of Pennsylvania.

On the 6th of October, 1843, Joseph Battin obtained a patent for a new and useful improvement in the machine for breaking and screening coal, which he defined, in his specification, as one in which the breaking and screening were effected simultaneously, by a set of breaking rollers, of a certain form, operating in connection with an assorting screen. After describing the machine, the claim was made as follows, namely :—

Having thus fully described the nature and operation of my machine for breaking and screening coal, what I claim as new therein, and desire to secure, by letters-patent, is the manner in which I have arranged and combined with each other the breaking rollers and the screen; the respective parts bêing formed, and operating substantially, as herein set forth and made known.

JOSEPH BATTIN.

On the 20th of January, 1844, he took out another patent, for the addition of a third, or auxiliary roller, of smaller diameter than the two at first used, and placed above them, and claimed as follows :—

Having thus fully described the nature of my improvement, in the manner of combining and arranging the toothed rollers used in the machine for breaking coal, what I claim therein as new, and desire to secure by letters-patent, is the so forming and gearing of such rollers as that the teeth of one of them shall always be opposite to a space between the teeth in the other, whenever they are operating upon the article to be broken ; the same being effected, substantially, in the manner herein set forth.

JOSEPH BATTIN.

A suit was brought by Battin against Clayton, in the circuit court for the eastern district of Pennsylvania, to recover damages for the infringement of the patent of October 6, 1843, when the court held that " the patent being merely for the combination of machinery, it could neither be supported nor assailed by proof of the novelty of the parts." The plaintiff thereupon submitted to a nonsuit; surrendered the patents of 1843 and 1844, and obtained a reissue of the patent of 1843, upon an amended specification. The patent of 1844 was not reissued.

The description of the machine and claim, in the reissued patent, concluded as follows, namely :—

By the construction and arrangement of the breaking rollers, it will be perceived that, as they rotate, the teeth constitute a series of progressive levers, which act on opposite sides of the lumps, and being placed so as not to coincide, snap or break the lumps between the points of pressure ; this pressure gradually increasing until the separation is effected, that is, during the rotation, until the teeth reach a plane passing through the axis of the two rollers, and then the effect having been produced, the teeth recede to liberate the lumps, and thus avoid the further reduction of the material. This mechanical action of the rotary teeth is thus adapted to the frangible or brittle nature of coal, which is readily pulverized when subjected to a continued percussion or pressing action.

It will be obvious from the foregoing that the form and size of

the teeth may be greatly varied, as well as the space between the periphery of the two rollers, without changing the principle or mode of operation of my invention, so long as the two rollers are geared together, and the teeth of one are in the rotation made to come opposite to, or in the space between, the teeth of the other, and *vice versâ*; space sufficient to hold the required size of lumps of coal, being left between the teeth of the two rollers when passing a plane which coincides with the axis of the two rollers.

What I claim, therefore, as my invention, and desire to secure by letters-patent, is the arrangement of the teeth on the two rollers, substantially as herein described, so that in their rotation the teeth of one shall come opposite the spaces between the teeth of the other, with sufficient space between to hold lumps of the required size, the rollers being so combined, by gearing, as to make them rotate in opposite directions; and, with the required velocities, to retain the relative position of the teeth of the two rollers, as described.

JOSEPH BATTIN.

At April term, 1850, Joseph Battin, as patentee, and Samuel Battin, as assignee, of an undivided half part, brought suits against the three parties named as defendants in error, in the caption of this report. The defendants pleaded not guilty, and the cause came up for trial, when the jury found a verdict for the plaintiff, for $800. Upon motion of the counsel for the defendants, a new trial was granted, the following reasons being filed:—

1. The court erred in deciding that the patent of September 4, 1849, was for the same invention as that claimed in the patent of October 6, 1843, and could be included in the reissued patent.

2. The court erred in deciding that the suits can be maintained in the name of Samuel Battin, as assignee under the assignment to him, of February, 1844.

3. The copy of the assignment from the patent-office, was illegally received in evidence for any purpose.

4. The court erred in permitting the plaintiff to amend his declaration, in a material matter of substance, without any condition, and without granting a continuance to the defendants, as requested.

5. Material evidence, on the part of the defendants, was excluded by the construction given to the defendants' notice of special matter, which, if received, would have produced a different result.

6. Important evidence was discovered when it was too late to give notice, and during the trial, which is set forth in the affidavit of John L. L. Morris, which was presented to the court.

7. The court erred, in the instruction given to the jury, as to the grounds upon which they should ascertain the actual damages.

8. The damages are excessive.

At October term, 1852, the cause came up again for trial, when the jury, under the instructions of the court, found a verdict for the defendants.

The bill of exceptions set forth the whole of the evidence, and the entire charge of Judge Kane to the jury.

The plaintiffs took exceptions to the charge, on the following grounds, namely:—

That the learned judge erred—

1. In the construction given by him to the patents and specifications of October, 1843, February, 1844, and September, 1849.

2. In ruling, as matter of law, that the patentee had given his invention to the public.

3. In construing the 13th section of the act of 1836, and the 7th section of the act of 1837.

4. In charging the jury that "Mr. Battin's invention, as he now defines it, was in use for nearly six years before he claimed that it was his property. He had made it known as an unprotected element of the combination he patented in 1843. It was not till 1849, that he asserted any other right in it for himself than he conceded to everybody else. He cannot reclaim what he has thus given to the public." And in not submitting to the jury the facts proved in regard to the origin and use of the invention.

5. In directing the jury that a description by the applicant for a patent of a machine, or a part of a machine, in his specification, unaccompanied by notice that he has rights in it as inventor, or that he desires to secure title to it as patentee, is a dedication of it to the public; and that such a dedication cannot be revoked after the machine has passed into public use, either by surrender and reissue, or otherwise.

6. In holding that the facts of this case are embraced in the foregoing propositions.

7. In not deciding that the patent of 4th September, 1849, is good and valid in law.

8. In directing the jury to find a verdict for the defendant.

It is difficult to explain the nature of some of these objections without setting forth the entire charge, which cannot be done. The following extracts, however, from the charge, appear to contain the ruling upon those points on which the decision of this court turned. The charge said:—

"It is said that the present defendants are using the apparatus described in this reissued patent, and that they should be

mulcted in damages, accordingly. But there are two legal posi-
tions, of a general character, which appear to me to bar the
plaintiff's right of recovery. They are these: —

" 1. That a description by the applicant, for a patent of a
machine, or a part of a machine, in his specification, unaccom-
panied by notice that he has rights in it as inventor, or that he
desires to secure title to it as patentee, is a dedication of it to
the public.

" 2. That such a dedication cannot be revoked after the ma-
chine has passed into public use, either by surrender and reissue,
or otherwise.

" The first of these propositions will hardly be disputed. If
an inventor has a right at all to give up his invention to the
world, there is no more unequivocal way of doing so than by
publishing it on the records of the patent-office, and at the same
time making no claim to it as his exclusive property. There is
no need of a formal disclaimer where no claim can be implied;
and the implication is all the other way, when, of several things
described, one is claimed without the rest.

" The second proposition, also, seems to be susceptible of easy
demonstration. Protection is given to an inventor, under the
patent laws, as the consideration for his disclosing what was
not known before, not as a tribute of civic gratitude for 'good
deeds past.' He loses his right, if he allows his invention to be-
come known before he patents it; and when he does patent it,
he is required so to describe it, at the very outset, that others
may not only know how to use it profitably after his patent shall
have expired, but be able to distinguish it from other things
while his patent is in force."

And again : —

" Mr. Battin's invention, as he now defines it, was in use for
nearly six years before he claimed that it was his property. He
had made it known, as an unprotected element of the combina-
tion he patented, in 1843. It was not till 1849, that he asserted
any other right in it for himself than he conceded to everybody
else. He cannot reclaim what he has thus given to the public.

" For these reasons, we instruct you that your verdict, in each
case, must be for the defendants."

The cause was argued in this court by *Mr. Keller* and *Mr.
Dallas*, for the plaintiffs in error, and by *Mr. Sheppard*, *Mr.
Mallery*, and *Mr. St. George T. Campbell*, for the defendants in
error.

The following were the points made by the counsel for the
plaintiffs in error: —

1. That the court erred in charging, as will be found in the

first and second propositions of the charge: " That a description, by the applicant for a patent, of a machine, or a part of a machine, in his specification, unaccompanied by notice that he has rights in it as inventor, or that he desires to secure title to it as patentee, is a dedication of it to the public." And " that such a dedication cannot be revoked, after the machine has passed into public use, either by surrender, or reissue, or otherwise."

2. That the error, in the foregoing propositions of the charge, involves error in the construction of the 13th section of the act of July 4, 1836, and. in the construction of, and the force given to, the several patents put in evidence.

3. That the court erred in determining judicially, by the construction of the surrendered and cancelled patents, that the reissued patent of September, 1849, is not for the same invention intended to have been patented by the patent of October, 1843, instead of submitting the question, as matter of fact, to be determined by the jury.

4. That the court erred in ruling, as matter of law, that the patentee had dedicated or abandoned his invention to the public, instead of submitting it, as a question of fact, to be determined by the jury.

The counsel for the defendants in error made the following points: —

1. The first patent (October 6, 1843,) was not for the breaking rollers, but for the combination of the breaking rollers and the screen.

2. If the patentee described the rollers and the screen, but did not claim them, it was a waiver of his rights (if any he had) therein, as inventor, and an abandonment of them, by operation of law, to public use.

3. If the original patent of 1843 was for the combination of the breaking rollers and the screen, and if the patentee, by describing the rollers, without claiming them, allowed them to go into public use, with a waiver of his rights, if he had any, it is submitted that he cannot, in 1849, reclaim the rollers.

The different claims were thus set forth: —

The want of sameness is evident on the face of the patents, and the repugnancy is manifest upon inspection and comparison.

Battin et al. *v.* Taggert et al.

| Claim in original patent of October 6, 1843. | Claim in the patent of February 12, 1844, which was subsequently surrendered, cancelled, and not reissued. | Claim in the reissued patent of Sept. 4, 1849. |
|---|---|---|
| Having thus fully described the nature and operation of my machine for breaking and screening coal, what I claim as new therein, and desire to secure by letters-patent, is, the manner in which I have arranged and combined with each other the breaking rollers and the screen; the respective parts being formed and operating substantially as herein set forth and made known. | Having thus fully described the nature of my improvement in the manner of combining and arranging the toothed rollers used in the machine for breaking coals, what I claim therein as new, and desire to secure by letters-patent, is the so forming and gearing of such rollers as that the teeth of one of them shall always be opposite to a space between the teeth in the other, whenever they are operating upon the article to be broken, the same being effected substantially in the manner herein set forth. | What I claim, therefore, as my invention, and desire to secure, by letters-patent, is the arrangement of the teeth of the rollers, substantially as herein described, so that in their rotation the teeth of one shall come opposite the space between the teeth of the others, with sufficient space between to hold lumps of the required size, the rollers being so combined by gearing as to make them rotate in opposite directions, and with the required velocities to retain the relative position of the teeth of the two rollers, as described. |

Here the reissued patent, instead of being for the same invention as the original patent, was for an invention patented in letters-patent issued after the original patent, and which have been surrendered, cancelled, and not reissued. The patentee having surrendered that patent, cannot include its subject-matter in the reissue of a prior patent.

Mr. Justice McLEAN delivered the opinion of the court.

This case is before us, on a writ of error to the circuit court for the eastern district of Pennsylvania.

The action was brought for the infringement of a patent. The jury, under the instructions of the court, found a verdict for the defendant. Exceptions were taken to the rulings of the court, which present the points of law for consideration.

On the 6th of October, 1843, Joseph Battin obtained a patent for the invention of a new and useful improvement in the machine for breaking and screening coal.

After describing the different parts of the machine, he sums up by saying: having thus fully described the nature and operation of my machine for breaking and screening coal, what I claim as new therein, and desire to secure by letters-patent, is, the manner in which I have arranged and combined with each other the breaking rollers and the screen; the respective parts being formed and operating substantially as herein set forth and made known.

An improvement to the above machine, by adding an auxiliary roller, was patented to Battin, 20th January, 1844. And on the 12th of February, 1844, another patent was granted to

him, for a new and useful improvement in the machine for breaking coal.

In his specification, he says that he had made a new and useful improvement, in the manner of combining and arranging the toothed rollers used in the machine for breaking coal, which rollers, as combined and arranged by me, are described as follows, in the specification attached to letters-patent, for a machine for the effecting simultaneously the breaking and screening of coal, granted to me under date of the 6th day of October, 1843 : The breaking part of my machine consists of two rollers of cast-iron, the peripheries of which are provided with teeth so placed as that, in the revolution of the rollers, the teeth of each of them shall stand opposite to the spaces formed by two contiguous teeth on the opposite roller. These rollers are geared together, in order to preserve the same relative position.

In the above-named letters he says : the manner of arranging and combining the toothed rollers was not made the subject of a claim, the said patent having been obtained for the combining of a roller-breaking machine, with a screen for separating the coal into the different sizes required; but as the breaking rollers, so formed and arranged and combined, are applicable to the ordinary cylinder-breaking machine, when not used in combination with a screen ; and as I have found, by continued experiment, that such rollers constitute a real improvement in any breaking machine, I have determined to secure to myself the benefit of such improvement, in a distinct and separate patent therefor. Rollers for the breaking of stone, of ores, of coal, of corn, and of other substances, have been frequently constructed, and are well known, &c.

And, he adds, having thus fully described the nature of my improvement, in the manner of combining and arranging the toothed rollers used in the machine for breaking coal, what I claim therein as new, and desire to secure by letters-patent, is, the so forming and gearing of such rollers, as that the teeth of one of them shall always be opposite to a space between the teeth in the other, whenever they are operating upon the article to be broken ; the same being effected substantially in the manner herein set forth.

And afterwards, on the 4th of September, 1849, the said Joseph Battin obtained a patent, in which it is stated that he had invented a new and useful machine for breaking coal, for which letters-patent were granted to him, dated October 6, 1843, to which was added an additional improvement, dated 20th January, 1844, and, said letters having been surrendered by him, the same have been cancelled, and new letters-patent have been ordered to issue to him, on an amended specification.

He also surrendered the patent granted to him the 12th of February, 1844, for an improved machine for breaking coal, which patent is hereby cancelled, but not reissued, &c.

After describing the invention, he sums up by saying: "What I claim, therefore, as my invention, and desire to secure by letters-patent, is the arrangement of the teeth on the two rollers, substantially as herein described, so that in their relation the teeth of one shall come opposite the spaces between the teeth of the other, with sufficient space between to hold lumps of the required size, the rollers being so combined in gearing as to make them rotate in opposite directions, and, with the required velocities, to retain the relative position of the teeth of the two rollers, as described."

In the 6th section of the patent act of 1836, it is declared that, "before any inventor shall receive a patent, he shall deliver a written description of his invention, in such full, clear, and exact terms, as to enable any person skilled in the art or science to which it appertains, to make and construct the same; and, in case of any machine, he shall fully explain the principle, and the several modes of the application of the machine, so that it may be distinguished from other inventions; and shall particularly specify and point out the part, improvement, or combination, which he claims as his own invention or discovery."

And, by the 13th section of the same act, it is provided, "that when a patent shall be inoperative or invalid, by reason of a defective or insufficient description or specification, or by reason of the patentee claiming in his specification, as his own invention, more than he had or shall have a right to claim as new, if the error has or shall have arisen by inadvertency, accident, or mistake, and without any fraudulent or deceptive intention, it shall be lawful for the commissioner, upon the surrender to him of such patent, &c., to cause a new patent to be issued to the said inventor, for the same invention, for the residue of the period then unexpired, for which the original patent was granted, in accordance with the patentee's corrected description and specification. And the patent so issued shall have the same effect and operation in law, on the trial of all actions hereafter commenced, for causes subsequently accruing, as though the same had been originally filed in such corrected form before the issuing of the original patent."

In his charge to the jury, the district judge said: " The case of Battin *v.* Clayton, which was before us some time ago, grew out of an alleged infraction of this patent, of 1843. We held, on the trial of that case, that the patent being merely for the combination of machinery, it could neither be supported nor

assailed by proof of the novelty, or want of novelty, of the parts. The patent was thereupon surrendered, and a new one issued, on the 4th of September, 1849, under an amended specification, which described essentially the same machine as the former one did, but claimed, as the thing invented, the breaking apparatus only."

And, he remarks : " It is said that the present defendants are using the apparatus described in this reissued patent, and that they should be mulcted in damages, accordingly." But there are two legal positions, of a general character, which appear to me to bar the plaintiff's right of recovery. They are these : —

1. That a description, by the applicant, for a patent of a machine, or a part of a machine, in his specification, unaccompanied by notice that he has rights in it as inventor, or that he desires to secure title to it as a patentee, is a dedication of it to the public.

2. That such a dedication cannot be revoked, after the machine has passed into public use, either by surrender and reissue, or otherwise.

The above instructions, we think, were erroneous.

Whether the defect be in the specifications or in the claim, under the 13th section above cited, the patentee may surrender his patent, and, by an amended specification or claim, cure the defect. The reissued patent must be for the same invention, substantially, though it be described in terms more precise and accurate than in the first patent. Under such circumstances, a new and different invention cannot be claimed. But where the specification or claim is made so vaguely as to be inoperative and invalid, yet an amendment may give to it validity, and protect the rights of the patentee against all subsequent infringements.

So strongly was this remedy of the patentee recommended, by a sense of justice and of policy, that this court, in the case of Grant *v.* Raymond, 6 Pet. 218, sustained a reissued and corrected patent, before any legislative provision was made on the subject. In that case, the chief justice said : " It will not be pretended that this question is free from difficulty. But the executive departments, it is understood, have acted on the construction adopted by the circuit court, and have considered it as settled. We would not willingly disregard the settled practice, in a case where we are not satisfied it is contrary to law, and where we are satisfied it is required by justice and good faith." The same principle was sanctioned in the case of Shaw *v.* Cooper, 7 Pet. 310.

How much stronger is a case under the statute, which secures the rights of the patentee by a surrender, and declares the effect

of the reissued and corrected patent? By the defects provided for in the statute, nothing passes to the public from the specifications or claims, within the scope of the patentee's invention. And this may be ascertained by the language he uses.

In the case of Stimpson *v.* The West Chester Railroad Company, 4 How. 380, it was held, that "where a defective patent had been surrendered, and a new one taken out, and the patentee brought an action for a violation of his patent right, laying the infringement at a date subsequent to that of the reissued patent, proof of the use of the thing patented, during the interval between the original and renewed patents, will not defeat the action." In the same case it was also held, that the proceeding before the commissioner, in the surrender and reissue of a patent, is not open for investigation, except on the ground of fraud.

The patent of 1843 was not surrendered on the obtainment of the patent of 1844. That was intended to be a new invention of arranging and combining the toothed rollers, which, the patentee says, was not made the subject of a claim in the patent of 1843. The patent of 1844 was cancelled, but not reissued, when the patent of 1849 was issued. At that time, the patent of 1843, and the improvement thereon, dated January 20, 1844, were surrendered and cancelled, and new letters-patent were issued on an amended specification.

The cause of the surrender of the patent of 1843, as stated in the charge to the jury, was the ruling of the court in the case of Battin *v.* Clayton, and that the amended patent of 1849 was consequently obtained. That ruling is not now before us, nor is it necessary to inquire whether the patent of 1843, on the specifications and claim, was sustainable. The plaintiff, by a surrender of that patent, and the procurement of the patent of 1849 with amended specifications, abandoned his first patent, and relied wholly on the one reissued. The claim and specifications in this patent, as amendatory of the first, were within the 13th section of the act of 1836. It is said, with entire accuracy, in the charge, in regard to the amended specification of the patent of 1849, that it "described essentially the same machine as the former one did, but claimed, as the thing invented, the breaking apparatus only." And this the patentee had a right to do. He had a right to restrict or enlarge his claim, so as to give it validity, and to effectuate his invention.

In the argument, the counsel very properly considered the patent of 1844 as not in the case. It was designed to secure a new combination, not included in the first patent; and as the patent of 1844 was surrendered and cancelled, and not reissued,

it being equally disconnected with the patent of 1843, and the reissued and corrected patent of 1849, it can have no effect on the claim of the plaintiff.

We think the court also erred in saying to the jury, "We instruct you that your verdict, in each case, must be for the defendants."

This, as well as the two instructions above noticed, took from the jury facts which it was their province to examine and determine. It was the right of the jury to determine, from the facts in the case, whether the specifications, including the claim, were so precise as to enable any person skilled in the structure of machines, to make the one described. This the statute requires, and of this the jury are to judge.

The jury are also to judge of the novelty of the invention, and whether the renewed patent is for the same invention as the original patent; and they are to determine whether the invention has been abandoned to the public. There are other questions of fact which come within the province of a jury; such as the identity of the machine used by the defendant with that of the plaintiff's, or whether they have been constructed and act on the same principle.

The judgment is reversed, and the cause is remanded to the circuit court for further proceedings.

### Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the eastern district of Pennsylvania, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said circuit court in this cause be and the same is hereby reversed, with costs; and that this cause be and the same is hereby remanded to the said circuit court, with directions to award a *venire facias de novo.*