## LANE *v.* LEVI.

APPELLATE PRACTICE; ASSIGNMENTS OF ERROR; PATENTS FOR COMPO-SITIONS; INFRINGEMENT.

1. On an appeal by the defendant from an order granting a prelimi-nary injunction on a bill to enjoin an infringement of a patent for a composition, an answer by the defendant and affidavits, an assignmeent of error that the bill insufficiently describes com-plainant's patent, will not be entertained although the bill is defective in that respect, where the defendant not only failed to demur or make the objection on the preliminary hearing, but admitted in his answer the existence of the patent and denied infringing it, and where the lower court was called upon to con-sider a certified copy of the patent and proceedings in the Patent Office preliminary to issue, offered on behalf of the defendant, and such papers are included in the record on appeal.

2. Nor, on such an appeal, will the question be entertained of whether the allegations of the bill in respect of the validity of the patent are sufficient to give jurisdiction in equity, where the point was not made on the hearing below; and could not have consistently been made in view of the answer admitting the validity of the patent as covering a composition of the complainant and seeking to avoid its effect by alleging substantial differences between the composition of the defendant charged to be an infringement, and that of the complainant, which relieved that of the defendant from the charge.

3. A patentee of a composition is not at liberty to prove that a part of the compound described in his claim for a patent, is not essen-tial or material to its operation; and, therefore, a temporary restraining order granted on a bill to enjoin an infringement of a patent for a composition for use as a furniture polish, is im-properly granted where it is shown in the bill that the defendant's alleged infringing composition contains no coal oil, while that substance is one of the ingredients of complainant's composition

as described in his specification and claims, and an essential ingredient according to the statements of the primary examiner in a preliminary rejection of complainant's application; even though the bill alleges that the coal oil is no essential part of the complainant's invention, not affecting the quality of the composition as a polishing fluid but being intended to thin a coloring ingredient.

No 1259.  Submitted January 8, 1902.  Decided January 20, 1903.

HEARING on an appeal by the defendant from an order of the Supreme Court of the District of Columbia granting a preliminary injunction in a suit in equity to restrain an alleged infringement of a patent for a composition used for furniture polish.                              *Reversed.*

The COURT in the opinion stated the case as follows:

The bill in this case was filed in the Supreme Court of the District by Philip Levi, on October 2, 1902, against the appellant, Fred Lane, to restrain the infringement of a patent.

The bill alleges that complainant obtained a patent on February 18, 1902, from the United States for a composition described therein and known as " The Ching Fow Piano and Furniture Polish," in the manufacture and sale of which he has been engaged.

That defendant, a former salesman in his employ, obtained a knowledge of the ingredients of the said polish, by means of fraud, before the issue of said patent, and has been making and selling the same under the name of " The Corona Piano and Furniture Polish " in the District of Columbia and elsewhere.  That he has had the composition sold by defendant subjected to analysis by a skillful chemist, whose affidavit, filed with the bill, shows that it is composed of the same ingredients as complainant's polish, mixed in the same proportions, with the exception that kerosene or coal oil has been omitted.  " That the kerosene or coal oil is no essential part of his invention and the use of it in the composition has nothing to do with the quality of the compound as a polishing fluid.  Its purpose is to thin the alkanet root that

is used in a powdered form in order that its coloring material may quickly pass into the compound." That this omission by defendant is either accidental or willful in order to make it appear that his polish differs from that of complainant. That he is advised and therefore avers that to change or omit the coloring does not amount to an invention, as the coal oil is only employed when coloring is used, and to omit it or substitute an equivalent would not affect the compound, or entitle the party making the change to a patent, or prevent its infringing complainant's patent.

That defendant has been selling his compound at a lower price than complainant's, and has seriously affected his sales, and is doing him irreparable damage, etc.

Affidavits, referred to in the bill and made exhibits, tend to sustain the charges made of fraud practiced in obtaining knowledge of the ingredients and proportions thereof in complainant's composition; that defendant boasted of having the same preparation, and of his sale of the same at a less price in competition with complainant.

The patent is not described in the bill save by date and number and the statement that it was issued for the " Ching Fow Piano and Furniture Polish;" nor is it filed as an exhibit.

The defendant did not demur to the bill, but answered it at once under oath before the preliminary hearing.

He admits the allegations of the first three paragraphs of the bill, one of which is that setting up the issue of the patent as above stated. He admits selling his own polish at a lower price, but denies the charge of obtaining knowledge of complainant's composition through fraud.

He avers that his composition is essentially different from complainant's, and that it was not lack of knowledge which induced him not to use kerosene or paraffine oil in his composition, but knowledge of other and better ingredients than those which he says form the basis of complainant's polish.

Upon the preliminary hearing on bill, affidavits, and answer an order was issued restraining the defendant until the final hearing from advertising, manufacturing, selling,

or attempting to sell the composition of the complainant, or any imitation thereof, under the name of "Corona Piano and Furniture Polish, or any other."

From this order defendant has taken an appeal as provided by the statute for such cases,

*Mr. W. S. Duvall* for the appellant.

*Mr. Edward L. Gies* and *Mr. C. T. Belt* for the appellee:

1. The averments of the granting of the patent is contained in the third paragraph of the bill. This entire paragraph is admitted by the answer of the defendant. If the pleading was insufficient, the defect, if it existed, should have been taken advantage of by demurrer. On the contrary, the appellant made answer and produced in the court below, a certified copy of the letters-patent. See *Thatcher* v. *Lyman,* 5 Mass. 260; *Butler* v. *State,* 5 Gill & J. (Md.) 511; *Capp* v. *Gilman,* 2 Blackf. (Ind.) 45.

2. Letters-patent themselves afford a *prima facie* presumption that the patentee is the original and first inventor, which is sufficient to establish the fact in the absence of evidence to the contrary. *Buchanan* v. *Howland,* 5 Blatchf. 151; Sec. 3340, Meyers Fed. Dec.; *Philadelphia & T. RR. Co.* v. *Stimpson,* 14 Pet. 448; *Seymour* v. *Osborne,* 11 Wall. 516; *Smith* v. *Goodyear Dental Co.,* 93 U. S. 486; *Cammeyer* v. *Newton,* 94 U. S. 225. The answer does not impeach the validity of the patent of the appellee, but has established it, and any question as to its validity is therefore not properly before the court on this appeal. Admissions in the answer properly establish facts so admitted, and a decree may be based entirely on such admission without further proof. Adams Eq. 363; 3 Greenl. Ev., Sec. 277; *Clements* v. *Moore,* 6 Wall. (U. S.) 299; *Cavender* v. *Cavender,* 114 U. S. 471; *Padfield* v. *Padfield,* 64 Ill. 166.

3. The proof is complete in the affidavits filed with the brief, that appellant was imitating the polish of the ap-

pellee and infringing his patent. These affidavits are not
denied or attempted to be denied. The answer is wholly
unsupported and is not responsive. The court below there-
fore properly took the view that the appellee was as much
entitled to protection in his property rights, as far as his
patent was concerned, as if his watch or his purse had
been taken. The proof shows that the use of kerosene or
coal oil was omitted from the polish sold by the appellant.
He succeeded in getting all other ingredients with their
proper proportions. Does his omission of coal oil from the
composition entitle him to the claim of a different polish,
from the patented polish of the complainant? In patent
law, a composition of matter means a mixture or compound
of two or more ingredients, the useful functions of which
is the result of the intrinsic character of the ingredients.
Such ingredients of the compound of the complainant and
appellee are the paraffine oil, butter of antimony, and water.
These constitute the intrinsic character of the compound,
and the kerosene oil and the coloring are not essential to
the compound. The coloring (alkanet root), which may or
may not be used in the compound, is well known and there-
fore would not lend patentability to this or any other com-
pound. Other suitable coloring would answer the same pur-
pose and constitute an equivalent. An unsubstantial or
coloring change in a compound will not protect from in-
fringement. *Woodward* v. *Morrison,* 1 Holmes, 124; *Ryan*
v. *Goodwin,* 3 Sumn. (U. S.) 514; Meyers Fed. Dec.,
Secs. 1055, 1135, 1136, 1144, 2134; *Foss* v. *Herbert,* 1
Biss. (U. S.) 121; *Rich* v. *Lippincott,* 2 Fish. Pat. Cas. 1;
*Carter* v. *Baker,* 1 Sawy. (U. S.) 512; *Dederick* v. *Cassell,* 9
Fed. Rep. 739; *Tilghman* v. *Proctor,* 102 U. S. 707; *Allen* v.
*Hunter,* 6 McLean (U. S.), 303. Where the defendant's
solution is amenable to the same laws as that of the plain-
tiff, and to give the same results, must be used under the
same conditions and be made according to the same princi-
ples as that of the complainant, it is a chemical equivalent
of the plaintiff's solution. *United Nickel Co.* v. *Pendleton,*
15 Fed. Rep. 739. In a patented composition it is easy, with

the aid of the patent specifications, to suggest changes in
the compound by substitution of chemical equivalents or the
omission thereof, which may produce similar or the same
results. The term "equivalent" when used with regard to
the chemical action of such fluids as can be discovered by
experiment, means equally as good. If two devices do the
same work in the same way and accomplish the same results,
they are the same. This principle also applies to composi-
tions. *Union Paper Bag Machine Co.* v. *Murphy,* 97 U. S.
120. An infringement takes place whenever a party avails
himself of the invention of the patentee without such varia-
tion as constitutes a new discovery. U. S. Cir. Ct. App.,
9th Jud. Dist.; *Norton et al.* v. *Jensen et al.,* 60 O. G.
1326.

This is the condition here. Kerosene oil and the coloring
matter are not new discoveries, but well known, the former
as a thinner for the latter, and the latter as a common color-
ing matter.

4. The appeal in this case is from an interlocutory order.
The issuance of such preliminary or interlocutory injunc-
tion, as a rule, rests solely in the discretion of the court. As
a general rule his action in ordering or denying a prelim-
inary injunction, will not be reviewed on appeal or other-
wise controlled. The granting and continuing of an in-
junction most always rests in the sound discretion of the
court according to the circumstances of each case. In this
case the complainant sets up grounds for equitable relief.
The bill charges fraud, and the circumstances are fully set
out and supported by sufficient affidavits. This gave the
court jurisdiction to prevent a continuance of such fraud
and to protect the appellee from the effects of the same, in
the absence of any adequate remedy at law and where the
damage done to him would have been irreparable.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The appellant is not in a position to avail himself
of his first assignment of error, which is founded on the

failure of the bill to sufficiently describe the subject-matter of the complainant's patent of which infringement is charged.

For whilst it would seem that the bill was defective in that respect, the defendant neither demurred nor objected in any form on the preliminary hearing, but admitted the existence of the patent, of the contents of which he was evidently advised, and denied that he was making and vending the composition claimed thereunder by the complainant. Moreover, on that hearing the learned justice who granted the injunction was called upon to consider certified copies of the patent, offered by the complainant, and of the proceedings in the Patent Office, preliminary to its issue, offered on behalf of the defendant. Both of these papers have also been presented for consideration on this appeal. For these reasons the point will not be considered. Before the final hearing the parties will have ample opportunity to amend if they so desire.

2. Whether the allegations of the bill in respect of the validity of the patent are sufficient to give jurisdiction in equity is likewise an immaterial question on this appeal.

No suggestion of the point was made on the hearing below; nor could it have been made, with any show of reason or consistency, in view of the answer admitting its validity as covering the composition of the complainant, and seeking to avoid its effect by the allegation of substantial differences between the two compositions which relieve that of the defendant of the charge of infringement. 3 Robinson on Patents, Sec. 1189; Walker on Patents, Sec. 673.

3. The only question that is directly involved in this appeal arises under the third and related assignments of error. It is whether, under the facts disclosed by the respective pleadings of the parties, the supporting affidavits, and the proceedings in the Patent Office, the manufacture and sale of the defendant's composition constitute such an apparent infringement of the complainant's patent as to warrant the grant of the temporary injunction?

A patentable compound or composition of matter is one

that is produced by the intermixture of two or more specific ingredients, and possesses properties pertaining to none of those ingredients separately, thereby accomplishing a new and useful result. The patentee who seeks protection for such a composition must describe with clearness and precision the component parts thereof, the process of their intermixture, and the result. *Tyler* v. *Boston,* 7 Wall. 327, 330; 1 Robinson Patents, Sec. 192; 2 Idem, Secs. 500 and 532.

The identity of a composition depends, in general, upon the identity of its ingredients and of their co-operative law, as well as upon the identity of the properties and effect of the composition as a whole. 1 Robinson on Patents, Sec. 300.

The addition, however, of substances that do not, by their interaction, change the properties, effect, or usefulness of the composition, does not destroy its identity. The composition is the same if its properties substantially remain. 1 Robinson on Patents, Sec. 195; *Klein* v. *Russell,* 19 Wall. 433.

Nor is a patent for a compound any less infringed through the substitution of one of its ingredients by another substance well known in the arts at the date of the patent, as endowed with the same capacity, and which, therefore, does not change its properties and effect. 1 Robinson on Patents, Sec. 247; *Fuller* v. *Yentzer,* 94 U. S. 288, 297; *Rowell* v. *Lindsay,* 113 U. S. 97, 102; *Fay* v. *Cordesman,* 109 U. S. 408, 420; *Hubbell* v. *U. S.,* 179 U. S. 77, 82.

On the other hand, it is an undoubted principle of the patent law that the omission of one of a combination of old parts distinctly claimed in the patent is not an infringement.

The combination as claimed is an entirety and disappears with the removal of one of its elements. *Prouty* v. *Ruggles,* 16 Pet. 336, 341; *Vance* v. *Campbell,* 1 Black, 427; *Klein* v. *Russell,* 19 Wall. 433, 465; *Dunbar* v. *Myers,* 94 U. S. 187, 202; *Rowell* v. *Lindsay,* 113 U. S. 97, 102; *Wright* v. *Yuengling,* 155 U. S. 47, 52.

Having made such a claim a patentee is not afterward

at liberty to prove that the described part is not essential
or material to the operation of his patented combination
or composition. *Vance* v. *Campbell,* 1 Black, 427, 429;
*Fay* v. *Cordesman,* 109 U. S. 408, 420. In the case last
cited it was said by Mr. Justice Blatchford in words that
have since been repeatedly approved: " The claims of the pat-
ent sued on in this case are claims for combinations. In such
a claim if the patentee specifies any element as entering into
the combination, either directly by the language of the claim,
or by such a reference to the descriptive part of the specifi-
cation as carries such element into the claim, he makes such
element material to the combination, and the court cannot
declare it to be immaterial. It is his province to make his
own claim and his privilege to restrict it. If it be a claim
to a combination, and be restricted to specific elements, all
must be regarded as material, leaving open only the question
whether an omitted part is supplied by an equivalent device
or instrumentality. *Water Meter Co.* v. *Desper,* 101 U. S.
332; *Gage* v. *Herring,* 107 U. S. 640." See also *Sargent* v.
*Hall Safe and Lock Co.,* 114 U. S. 63, 86; *Electric Signal
Co.* v. *Hall Signal Co.,* 114 U. S. 87, 98; *Yale Lock Co.* v.
*Sargent,* 117 U. S. 373, 378; *McClain* v. *Ortmayer,* 141
U. S. 419, 425; *Royer* v. *Coupe,* 146 U. S. 524, 530;
*Wright* v. *Yuengling,* 155 U. S. 47, 52; *Hubbell* v. *U. S.,*
179 U. S. 77, 82.

The rule that a patentee shall not be heard to say that he
has claimed more than is necessary to the successful opera-
tion of his combination is even more strictly applied in those
cases where, by reason of the narrowness of his invention,
the proper authorities of the Patent Office have, by sugges-
tion and reference, induced him to particularity of descrip-
tion both in specifications and claims. *Knapp* v. *Morss,* 150
U. S. 221, 229; *Hubbell* v. *United States,* 179 U. S. 77, 80.

Applying the test of the foregoing principles to the facts
disclosed by the pleadings and accompanying exhibits and
records of the Patent Office, we are of the opinion that the
injunction *pendente lite* ought not to have been granted.

The records show that the complainant applied for a patent

for a furniture polish, consisting of an intermixture of paraffin oil, refined carbon oil, distilled water, butter of antimony, alkanet root, and oil of mirbane.

The application was first rejected by the primary examiner, whose communication of the fact contains the following: "The essence of applicant's invention appears to consist in a composition of two petroleum distillates, 'carbon oil' and 'paraffin oil,' together with butter of antimony. Butter of antimony is a common ingredient in furniture polishes, as shown. * * * Patent to Tomoor * * * shows it common to employ the two petroleum distillates in a furniture polish. In view of the prior art, therefore, it would seem that applicant's composition covers merely an aggregation of agents commonly used in furniture polishes, and for this reason the claim is rejected."

In a subsequent communication the applicant was required to set out definitely what he meant by "coal oil" and "paraffin oil," and to give their density in "Degrees Baume." He was also required to explain the advantages of distilled water over ordinary water.

After making the required amendments and explanations applicant received his patent on February 18, 1902. The description of his process is thus stated therein:

"In carrying out my invention I employ paraffin oil, refined carbon or coal oil, butter of antimony, and distilled water, thoroughly mixed with a suitable coloring and perfume. These ingredients are combined in the following proportions stated, viz.: distilled water, 14 gallons; paraffin oil (25° gravity, Baume), 80 gallons; coal oil or refined carbon oil (150° fire-test proof, 46° to 48° gravity, Baume), 6 gallons; butter of antimony, 2 pounds. These ingredients are thoroughly mingled by agitation, and then is added a coloring and a perfume consisting of the following ingredients in the proportions stated, viz.: Alkanet root (coloring), 10 pounds; oil of mirbane (perfume), as desired."

* * * * * * * *

"The element of coal oil in the compound thins the paraffin oil and cuts and thins the whole composition. The ele-

ment of water when mixed with the other ingredients forms a perfect cleaner, and after the application a surface is produced of superior gloss of great durability.

"Distilled water is employed because all foreign matter is eliminated by distillation, and as it is important that the compound should be as clean and pure as possible. Ordinary water will not produce the same results."

The claims of the patent read as follows:

"1. The herein-described composition of matter, consisting of distilled water, paraffin oil, coal oil, butter of antimony, and a coloring of alkanet root, substantially as and for the purpose specified.

"2. The herein-described composition of matter, consisting of distilled water, fourteen gallons, paraffin oil eighty gallons, coal or refined carbon oil six gallons, butter of antimony two pounds, alkanet root ten pounds, and oil of mirbane as desired, substantially as and for the purpose specified."

Now it appears from the allegations of the bill that the defendant's composition contains no "kerosene or coal oil" and the analysis of defendant's composition, given in the affidavit of the chemist, shows no kerosene oil, but states that the boiling point of the liquid after separation of the water indicated an oily base of paraffin oil.

The bill goes on to allege, however, and is supported by the affidavit of the chemist, that "the kerosene or coal oil is no essential part of his invention and the use of it in the composition has nothing to do with the quality of the compound as a polishing fluid. Its purpose is to thin the alkanet root that is used in a powdered form in order that its coloring material may quickly pass into the compound." Whilst this may be true it is nevertheless inadmissible, as we have seen, because of the specific statement of a fixed proportion of carbon oil as one of the ingredients of the composition described in the specification without qualification, and likewise carried into the two claims.

Moreover, it is in direct conflict with the further statement in the specification that "the element of coal oil in the

compound *thins the paraffin oil and cuts and thins the whole composition.*"

That the coal oil as described was regarded in the patent office as an essential ingredient of the polish sought to be patented is clearly shown in the statement of the examiner hereinabove quoted.

The polish of the defendant, though resembling that of the patent, cannot be treated as an infringement because of its omission of this ingredient that is a material element of the composition of the patent. It follows that the order granting the injunction must be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.         *Reversed.*