**Charles H. MARTIN, Appellant,**

v.

**BE–GE MFG. CO., OF GILROY, a corporation, and Albert G. Gurries, Appellees.**

**No. 14509.**

United States Court of Appeals Ninth Circuit.

April 19, 1956.

Charles H. Martin, in pro. per.

Flehr & Swain, San Francisco, Cal., Webster & Webster, Stockton, Cal., for appellees.

Before HEALY and POPE, Circuit Judges, and MATHES, District Judge.

MATHES, District Judge.

Appellant brought this action for infringement of claims 10 and 11 of United States Letters Patent No. 2,014,479, granted to him on September 17, 1935, for a "Land Leveler."

The District Court, after trial, adjudged the claims not infringed, and declared the patent invalid for want of invention. This appeal is from that judgment.

A land leveler, as the name suggests, is a device used in leveling and distributing the soil for field cultivation, road construction, and other purposes. It usually consists of a scraper blade mounted on a heavy-metal draft frame on wheels, which frame in turn is connected to a suitable power means such as horses or a tractor.

In operation, as the scraper is drawn over the surface of the ground in digging or loading position, the surplus soil is drawn up over the scraper blade and into the scraper bowl, where it is accumulated until the bowl is emptied. The scraper bowl, which is usually a rearward extension of the scraper blade, consists of an inclined bottom portion, a pair of forwardly-extending end walls and an upwardly-extending back or bowl portion.

Ordinarily, the wheels are rigidly attached in some manner to the draft frame, while the scraper blade is made adjustable to prevent excessive soil penetration as the leveler is being drawn forward under loading conditions. This adjustable feature also permits shifting the scraper blade into and out of engagement with the ground to aid unloading of the scraper bowl, and in order to permit the leveler to be moved on wheels from one location to another with the scraper blade elevated above the ground.

Land levelers using the basic principle of the scraper blade have been patented and in use for a great many years, one of the earlier patents dating back to 1839. The field is a crowded one, and the file wrapper discloses that appellant experienced some difficulty in convincing the Patent Office of the novelty of his claims.

Appellant's device is well described in claim 10 of his patent as: "A land leveler comprising [1] an adjustable scraper tiltably movable into and out of

engagement with the ground, and [2] means to tiltably operate the scraper; said scraper comprising [A] an inclined bottom portion and [B] an upwardly extending back [C] curving forwardly at its top to produce a lifting force on the scraper when the fully loaded scraper is drawn forward, whereby excessive soil penetration of the scraper bottom is prevented."

The wheels of appellant's device, unlike those of other devices, do not ride on the ground during the scraping operation, but are raised off the ground and come into operation only when the scraper bowl is being emptied.

In the words of the patent specifications: "One object of the invention is to provide an improved form of land leveler wherein the scraper, when in scraping positions, rests directly on the ground and is unsupported by the wheels, the mounting of the latter being such that in these positions of the scraper, the wheels are raised off the ground and the weight of the leveler is carried entirely by the scraper."

The distinctive feature of appellant's device, and the one which he claims distinguishes it from the prior art, is item [C] of above-quoted claim 10, the forwardly-curving extension at the top of the upwardly-extending back portion of the scraper member. In operation, as the soil fills the scraper bowl and presses upward against this forwardly-curving extension or "lip" of the scraper bowl, a lifting force is exerted on the entire scraper member as it is being drawn forward. This lifting force, appellant explains, is designed to limit automatically the soil penetration of the scraper blade, without aid from the operator.

In the case of the ordinary land leveler, it appears that the wheels are relied upon in part to prevent excessive soil penetration, since the scraper blade is set at a fixed position relative to the draft frame and must be manually adjusted by the operator, by means of a hydraulic mechanism or otherwise.

The accused device, the "BE-GE Land Leveler", appears to operate in a manner similar to the ordinary "land leveling devices of the present type" which appellant took pains to distinguish from his own in securing the patent in suit. The scraping member of the accused device, when in scraping position, does not rest directly on the ground unsupported by the wheels as in appellant's device, but rather is supported by the wheels, which ride on the ground both when the scraper blade is out of engagement with the ground and when it is in scraping position.

Appellant contends that appellees' device infringes the patent in suit by reason of the fact that the bowl of appellees' scraper also has an overhanging "lip" which, although not of the same shape as the "lip" in appellant's device, nevertheless performs the same function, says appellant, of producing a lifting force on the scraper blade when the fully-loaded scraper is drawn forward, and thus limiting the soil penetration of the scraper blade.

To this charge of infringement, appellees reply that what appellant terms a forwardly-curving extension or "lip" on the accused device is merely a portion of the frame member of the scraper bowl, which serves only to strengthen the structure and does not operate in any manner to prevent excessive soil penetration of the scraper blade.

Conflicting evidence was presented at the trial, as to the extent of the lifting force exerted against the "lip" of the accused device by the soil in the scraper bowl. Appellees produced witnesses who testified that in the operation of appellees' device the upward push of the soil exerts little or no force against the "lip". Appellees' chief engineer testified indeed that not only is there exerted against the "lip" no lifting force sufficient to limit the soil penetration of the scraper blade, but also that such a lifting force would be distinctly undesirable in the operation of the "BE-GE Land Leveler", since it would result in placing the penetration of the blade beyond control of the operator.

After hearing all the evidence and viewing motion pictures showing the op-

eration of the accused device, the trial judge, sitting without a jury, listed several differences in structure and operation between appellees' device and the device of the patent in suit, and found there was no infringement, since "the function and mode of operation of the ... [appellees'] devices differ from the function and mode of operation of the device described and claimed in the Letters Patent sued upon." See: Yale Lock Co. v. Sargent, 1886, 117 U.S. 373, 378, 6 S.Ct. 931, 29 L.Ed. 950; Field v. De Comeau, 1886, 116 U.S. 187, 190, 6 S.Ct. 363, 29 L.Ed. 596; Stewart-Warner Corp. v. Lone Star Gas Co., 5 Cir., 1952, 195 F.2d 645, 648; Grant v. Koppl, 19 Cir., 1938, 99 F.2d 106, 110; Miller v. Life Savers, Inc., 2 Cir., 1933, 62 F.2d 513, 516; 3 Walker, Patents § 496 (Deller's Ed. 1937).

The issue of patent infringement is one of fact. Stilz v. United States, 1925, 269 U.S. 144, 147, 46 S.Ct. 37, 70 L.Ed. 202; Battin v. Taggert, 1854, 17 How. 74, 58 U.S. 74, 84, 15 L.Ed. 37; McRoskey v. Braun Mattress Co., 9 Cir., 1939, 107 F.2d 143, 147.

This Court may not upset a finding of fact of the District Court "unless clearly erroneous", Fed.Rules Civ. Proc. rule 52, 28 U.S.C.A.; Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 609–610, 70 S.Ct. 854, 94 L.Ed. 1097; Patterson-Ballagh Corp. v. Moss, 9 Cir., 1953, 201 F.2d 403, 407; Refrigeration Engineering v. York Corp., 9 Cir., 168 F.2d 896, 899, certiorari denied, 1948, 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406; Maulsby v. Conzevoy, 9 Cir., 161 F.2d 165, 167, certiorari denied, 1947, 332 U.S. 791, 68 S.Ct. 99, 92 L.Ed. 373; and here there is ample evidence to sustain the finding of non-infringement.

The Supreme Court has admonished that even in cases where no infringement appears, it is the "better practice" to adjudicate also the issue of validity, Sinclair & Carrol Co. v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644; but this has been interpreted as "a mere cautionary admonition to the courts to exercise their discretion whether to pass upon the question of validity, and to strike down clearly invalid patents where it would be in the public interest to do so, even though a finding of noninfringement would dispose of the case." Kemart Corp. v. Printing Arts Research Laboratories, Inc., 9 Cir., 1953, 201 F.2d 624, 634; see: Harries v. Air King Products, 2 Cir., 1950, 183 F.2d 158, 161–162.

Inasmuch as the patent in suit was issued in 1935 and expired in 1952, 35 U.S.C. § 154, there remained no public interest in a determination of the issue of validity. So it was not necessary for the District Court to adjudicate that issue in view of the finding of non-infringement.

The learned trial judge did, however, adjudge the patent void for lack of invention, and we have reviewed his determination and find no error.

The judgment of the District Court is affirmed.