UNIVERSAL BRUSH CO. v. SONN et al.

(Circuit Court, N. D. New York.   July 14, 1906.)

1. PATENTS—INFRINGEMENT—METHOD OF MAKING BRUSHES.

   The Morrison patent, No. 717,014, claim 1, for a method of making brushes, which consists in depositing a mass of heated plastic composition, which becomes hard when cooled, within a chambered brush-frame having a contracted aperture, and forcing one end of the groups of bristles into the composition when in the plastic state, is a fundamental one, which made an important and useful advance on the prior art, and is entitled to a broad construction and to the benefit of the doctrine of equivalents. The chamber having a "contracted aperture" is merely one of the means used in carrying the method into effect, and the claim is infringed by the method of the Sonn patent, No. 791,510, which is the same in principle, and, although the chamber used has not such contracted aperture, it has a raised portion in the center, which is its substantial equivalent as such means.

2. SAME—EQUIVALENTS.
  A substantial equivalent of a patented device or means which performs
  the same function does not avoid infringement because it may perform an
  additional function.
  [Ed. Note—For cases in point, see vol. 38, Cent. Dig. Patents, § 374.]

Suit in equity to restrain alleged infringement of United States
letters patent No. 717,014, dated December 30, 1902, application filed
November 26, 1898, and issued to Universal Brush Company, as-
signee of William Morrison, the inventor, for improvements in mak-
ing brushes. Complainant also asks an accounting.

George A. Mosher, for complainant.
Ward & Cameron (John P. Bartlett and Frederick W. Cameron, of
counsel), for defendant.

RAY, District Judge. This patent relates to that class of brushes
having a chambered back of wood, metal, or other material, and a
plurality of bristle-tufts secured in such back or frame by means of a
composition. This composition, when heated, is soft and plastic, but
becomes hard and firm when cooled. The patent in suit has two
claims, the first of which relates to the method of making brushes,
and this only is in issue. That claim reads as follows:

"(1) The herein described method of making brushes which consists in de-
positing a mass of heated plastic composition within a chambered brush-
frame having a contracted aperture, forcing one end of a group of exposed
bristle-tufts through the aperture and into the composition, and at the same
time giving form to the face of the composition by mould-pressure, and sup-
porting the bristles in the desired position, projecting from the composition
out through the face aperture, until the composition cools and hardens."

The specifications expressly state that, "in making brushes by my
improved method above described, the brush-back or frame may be
made of any desired material, and in any known manner." The
method claim of the patent, therefore, relates solely to the method of
attaching the bristles to the back or frame by means of this compo-
sition. In the manufacture of brushes of this description the bristle
apertures of a plate or die, made for the purpose, are filled with
bristles of suitable length, so that they form a plurality of tufts or
knots, each distinct and separate from the others. The heated and
therefore plastic composition is then put in the recess or aperture in
the face of the brush-back or frame, and the projecting bristles still
held in the plate or die are then forced into the composition, and form
is given to the face of the composition among these tufts of bristles
by contact with the face of the die, and the tufts of bristles are also
supported in the proper position until the composition cools and
hardens. During this process of pressure of the die upon the plastic
material, the one end of the tufts of bristles are in that material,
while the other end projects out through the apertures of the die on
the upper or outside thereof, and are wholly separated and protected
from contact with the composition. When this material has hard-
ened, the pressure and die are removed, and we have the composition
filling the recess or aperture in the face of the brush-frame or back,

and adhering to it, holding and retaining these tufts of bristles, and, aside from finishing and polishing, the brush is complete.

In the specifications relating to the object and principal features and novel method of making brushes, the patent says:

"The objects of my invention are to cheapen the manufacture and improve the finish of brushes. The principal feature of my invention consists in the method of making brushes having a chambered or recessed frame or back, consisting in making a brush-head within the frame or back by inserting tufts of bristles into heated plastic composition first deposited in the brush-frame. * * * My novel method of making brushes is as follows: In making the brush-head, bristles of suitable length are first inserted in the apertures, C, of the bristle-plate, $C^1$, so that they form the tufts or knots, C2, projecting a short distance beyond the plate to the subjacent stop-plate C3, having a raised portion, C4, to support the bristle-plate at the required height. The bristles may be inserted by hand or by mechanism like that shown in United States patent No. 570,604, issued to me November 3, 1896, or in any known manner. After the bristle-plate has been supplied with bristles, a covering-plate, C5, is placed over the tops of the tufts, and the lower projecting ends of the bristles are pushed through the face aperture down into the heated plastic material, D, previously deposited through the aperture in the chambered frame, as seen in Fig. 7. The lower surface of the perforated portion of the bristle-plate is a molding surface, and may be concaved, as indicated by the curved dotted line in Fig. 7, to give a convexed form to the face of the composition pad forming part of the brush-head. When desired, the covering-plate, C5, may have an operating handle, C6. The composition quickly cools and hardens sufficiently to tightly hold the bristle tufts, after which the bristle-plate can be removed from the completed brush; this plate serving to support the projecting bristles in the desired position during the process of cooling and hardening. My improved method of inserting the bristles obviates the necessity and delay of forming a partial bristle-supporting pad on the ends of the bristles projecting from the bristle-plate before inserting the bristles through the face aperture, as heretofore commonly practiced, as I force the exposed and uncovered bristle ends directly into the heated composition first deposited in the chambered frame. By so doing I am able to determine exactly the proper quantity of composition to fill the chamber in the brush-head without having any excess to be forced out of such chamber when the bristles are inserted therein. As heretofore practiced, in order to insure the filling of the chamber in the brush-head, it was necessary to use a slight excess of plastic composition, the surplus being forced out of the chamber when pressure was applied, and frequently leaving evidences of its escape upon the frame and bristles, and detracting from the ornamental and finished appearance of the brush. Should a surplus of composition be used in my improved method, it will be forced out and cleanly cut off by the sharp edges of the metal frame, if made as above described, the metallic surface of the frame permitting no adhesion of the composition thereto, as would be the case with wooden or non-metallic frames."

The defendant alleges the invalidity of the patent if broadly construed so as to cover the method of defendants' manufacture, and also noninfringement in case the claim is sustained within a limited scope, as it is claimed it should be if sustained at all. The defendant contends that complainant's method of making brushes is confined to the use of a "chambered brush-frame having a contracted aperture"; that is, an aperture in the face of the brush-frame having the edges of that part of the frame surrounding it drawn in somewhat, and overhanging the outer edges or sides of the chamber or recess. The metal brush-back or frame shown in the drawings of the Morrison patent and described in the specifications shows a brush-back or frame of this kind; that is, one with an aperture so contracted. But

in the specifications Morrison says: "In making brushes by my improved method above described, the brush-back or frame may be made of any desired material and in any known manner." Does this word "manner" relate solely to the way in which it is made—that is, the process of making it—or to its form when made? It seems to me clear that "manner" refers to its form and shape when completed, and that it is sufficient if the brush-frame has a chamber for containing the composition, with an aperture contracted in any way. Synonyms of "contract" are "lessen," "shorten," "narrow," "diminish," "abridge," "reduce," "draw together." Hence "contracted" means "lessened," "narrowed," "diminished," "abridged," or "reduced," as well as "drawn together." I do not think a proper construction of this patent limits it to the use of a back or frame with an aperture into the chamber contracted in the manner shown and described in the drawings of the patent. But must not this aperture be contracted in some way; that is, made smaller than the surface area of the recess or chamber? The Century Dictionary defines "contracted" thus: "Drawn together or into a smaller or narrower compass; shrunk." "Abridged," "reduced," or "narrowed," would mean made small as compared with something else. The Standard Dictionary gives to the word "contracted" the meaning "not extensive." We frequently speak of a room or space in a building as "contracted" because small as originally constructed, having no purpose to indicate that it was once larger. I do not think the words "contracted aperture" should be construed to mean an aperture once larger, and made smaller by some means, natural or mechanical.

It is quite true that a patentee may limit his claims by the language used therein in such a manner and to such a degree as to deprive himself of his real invention; and it is not the province of the court to enlarge or restrict the scope of a patent which by mistakes of the patentee were issued in terms too narrow or too broad to cover the true invention even when the error of the patentee is plainly and conclusively shown. See U. S. Repair, etc., Co. v. Assyrian Asphalt Co., 183 U. S. 601, 22 Sup. Ct. 91, 46 L. Ed. 342, where the court said:

"It is not within the rightful power of the courts to enlarge or restrict the scope of patents which by mistake were issued in terms too narrow or too broad to cover the invention, however manifest the fact and extent of the mistake may be shown to have been."

In such cases the remedy of the patentee is to seek a reissue. But while this is strictly true, courts are not to be overdiligent or overastute in hunting for constructions of a patent, or of its language, or in giving meanings to its words which will defeat it, when a fair construction of the language used and the giving of the ordinary meaning to the words employed—that meaning, if they have two or more, which is consistent with and in aid of the general idea and purpose evidently intended to be expressed by the patentee—will uphold it. Of course the description of the invention claimed must be so clear and exact as to enable one skilled in the art to which the alleged invention relates to make and use it without experiments of his own. Mowry v. Whitney, 14 Wall. 644, 20 L. Ed. 860. But while this is

true, mere changes in form or of the manner of putting together do not avoid infringement if all the means are employed in substantially the same way to produce the same result, or well-known equivalents are substituted. There are cases where, by reason of the express limitations of the claims and in view of the prior art, the patentee is not entitled to the doctrine of equivalents. The main contention of the defendant is that the claim in question calls for the use of "a chambered brush-frame having a contracted aperture," and that, this contracted aperture into the chamber being an essential part of the claim, it must be restricted to that limitation. Also, that as defendant does not use a brush-frame "having a contracted aperture" forming the opening into the chamber or recess in the frame, it does not infringe, as it does not use all the essential elements of complainant's claim. In the patent in suit the aperture in the face of the brush-handle or brush-frame is never necessarily smaller or more contracted than when in its completed state as originally designed and made. The aperture into the recess or chamber may be made by hollowing out the face of the frame, leaving the edges of the frame to somewhat overhang the chamber. When completed the aperture is just as it always was, except as gradually enlarged in the process of making. It is not necessarily made large and then smaller by adding the overhang part, except in the metal construction described. No process of shortening, narrowing, diminishing, abridging, reducing, or drawing it together is necessarily gone through with. It is an aperture not necessarily as extensive or large as it would be if made of the full size or compass in all its parts the largest dimension of the chamber would justify. The defendant uses a brush-back or frame having a chamber with an aperture in its face used for the same purpose as is complainant's, and which, to an extent at least, performs the same function. This recess or chamber in the defendant's brush-frame is "contracted." It is a contracted chamber in the same sense as is complainant's aperture a contracted one. The interior space of the chamber is contracted—made smaller, not so extensive as it otherwise would be—by leaving in the central bottom part thereof a raised unexcavated portion which contracts, lessens, reduces, and abridges the dimensions of the chamber to a lesser extent than they would be if of the full size or compass its larger outer dimensions would justify. But the aperture or opening into the chamber is not necessarily a contracted one. It is of the full circumference and area of the chamber in its largest dimension. Is it a "contracted aperture" in the same sense the words are used in the Morrison patent? Confusion is apt to arise in considering this patent and its method claim from the fact that in describing the brush in the specifications the patentee has described a sheet metal frame or back made of two sections, which is recessed or chambered, the opening into this recess or chamber being spoken of as the "frame aperture," and has also described a pad forming ring inserted within and surrounding this recess, and soldered to its edges before the composition is placed therein. The patent says:

"I have shown in the drawings one form of construction of chambered brush-back or frame adapted to the manufacture of brushes by my improved method, which construction I will proceed to describe in detail."

He then describes this one form of construction of a metal brush-back or frame, and in so doing says of the recessed apertured handle proper, and of the other section which is inserted and soldered to the main frame:

"The two sections are curved near their peripheral edges, as seen in Figs. 4, 5, and 6, to improve the ornamental effect of the external appearance, and at the same time form inwardly-projecting lips, A3, around the brush-head aperature adapted to hold the head in place. Before depositing in the frame the heated plastic composition which forms the pad of the brush-head, a forming ring, B, concavo-convex in cross-section, as seen in Figs. 4 and 7, is inserted through the brush-head aperture, and secured therein by solder or any known means. The forming ring is made to correspond in form with the brush opening, being just a little larger in diameter, and cut, as at B1, so that, by lapping temporarily the cut ends the ring can be pushed through the opening, after which it is expanded to its normal diameter."

This mode of putting in the forming ring, when used, is made necessary by the curving in of the two metal sections in this particular form of construction near their peripheral edges, as above described. But it must all the time be remembered that this curving in is not an essential of the construction, but ornamental only, while at the same time, when used, serving the useful purpose mentioned. So of the forming ring. That is only used necessarily in the metal construction, the one form only being described. But, after all, in concluding the specifications the patent says, to repeat: "In making brushes by my improved method above described," and the method is described separately from the brush and brush-frame, "the brush-back or frame may be made of any desired material and in any known manner"; that is, as before stated, in any desired form or of any desired construction.

The most serious objection to the construction of claim 1 of the patent, contended for by complainant, is that in describing the "method" the patent says:

"After the bristle-plate has been supplied with bristles, a covering plate, C5, is placed over the tops of the tufts, and the lower projecting ends of the bristles are pushed through the face aperture down into the heated plastic material, D, previously deposited through the aperture in the chambered frame, as seen in Fig. 7."

The patent has before said: "The principal feature of my invention consists in the method of making brushes having a chambered or recessed frame or back," but nothing is said as to the aperture or its form. Hence arises the inquiry, does not the patent throughout contradistinguish the cavity, recess, or chamber in the front or face of the frame from the opening into it formed by the upper edges of the frame about such cavity, and when speaking of the aperture does not the patent always refer to this opening? The terms "pushed through the face aperture," and then "down into the heated plastic material, D, previously deposited through the aperture in the chambered frame," are significant. And again, later, is used the words:

"My improved method * * * obviates the necessity * * * before inserting the bristles through the face aperture as heretofore commonly practiced, as I force the exposed and uncovered bristle ends directly into the heated composition first deposited in the chambered frame."

This clearly distinguishes the chamber from the aperture or opening into the chamber, and the words "pushed through" seem to indicate a narrowed or lessened opening or aperture into the chamber. But the aperture is spoken of in such instance as the "face aperture." When we come to the claim the words "contracted aperture" are used. Does this refer to the chamber in which the plastic material is deposited when the brush is complete? Or does it refer simply to the opening into that recess or chamber? "Aperture" is "an opening"; "a hole, orifice, gap, cleft, or chasm; a passage or perforation; any direct way for ingress or egress." I think the words "contracted aperture" refer explicitly to the opening into or mouth of the chamber in which the plastic material is placed, and in which it remains when the brush is completed, and that claim 1 refers to a method of making brushes in which this form of brush-back or brush-frame only is used. The complainant contends that the meaning to be given to the word "contracted" as used in claim 1 is "not extensive," so it would read "within a chambered brush-frame having a not extensive aperture"; that is, an aperture into the chamber not extensive. It cannot be more extensive than the face of the brush-frame or more extensive than the upper surface area of the chamber itself, and hence the irresistible inference is that, giving the word "contracted" the meaning contended for, the claim means a chambered brush-frame having an aperture into same not as extensive as the surface of the chamber itself. Else why use the word "contracted" at all? Are we at liberty to reject it as meaningless or of no importance in the working out of the method described? Or was Morrison referring to the prior art where the aperture of a metal plate used in forming the brush-pad was made flaring and broader and wider than the upper surface of the chamber or recess therein, so as to make the removal of the brush-pad therefrom easy? The specifications of the patent speak of the "brush-head," "brush-head pad" and "head." Evidently the "brush-head" is the plastic material when hardened, with the tufts of bristles fixed therein. The composition when formed is the pad of the brush-head. The specifications also say, to repeat:

"The two sections are curved, * * * and at the same time form inwardly projecting lips, A3, around the brush-head aperture, adapted to hold the head in place."

Evidently, the patentee had in mind the necessity in a metal frame of having something to hold this brush-head when formed and hardened in place within the chamber or recess. These inwardly projecting lips, which in fact contract the aperture into the chamber, do this. Hence the idea of a "contracted aperture," and Morrison may be said to have regarded it as essential in all forms of construction of the brush-back or frame, for he carries the idea into the claim, and provides for a "contracted aperture." He nowhere suggests a substitute or a reliance upon the adhesion of the plastic composition

to the frame, when made of wood, or the substitution of any equivalent, or of an elevated table within and on the bottom of the recess or chamber as found in defendant's brush. But still he says the frame may be constructed in any known manner. This clearly indicates any form of construction for the brush-back or frame. In short, Morrison's idea of means for retaining the brush-head within the metal frame was, and, as expressed, is, to have a contracted aperture overhanging the edges of the brush-pad when formed within the chamber. For this "contracted aperture," so far as it serves to hold the brush-head in place, the defendant has substituted "a raised center portion" in the chamber, as described in letters patent No. 791,510, dated June 6, 1905, application filed December 12, 1902, to Anson L. Sonn, the claim of which reads as follows:

"In a brush the combination of a composition, bristles secured to said composition, a brush-back provided with a raised center portion, a groove between said center portion and a ridge along the rim of the brush-back, said composition secured within said groove, substantially as described."

In describing his purpose he says:

"My invention is to provide a new and more effectual means for retaining the cement in the brush-back and at the same time make the completed brush lighter in weight than has heretofore been accomplished, so far as I am aware, in cement or composition brushes. The cement or composition is heavier than the wood, which is the material of which the brush-back is usually constructed. Therefore it is desirable to have as little composition as is consistent with good construction. I preferably arrange a brush-back, A (shown in Fig. 2), in which a portion, C, is cut out, leaving a central part B of substantially the same thickness as the brush-back, thus forming a groove, C, in the brush-back, extending around the sides of the brush-back. Within the groove, C, and over the portion, B, the plastic cement or composition will extend and will retain in position the pad of cement or composition, K, containing the bristles when the same has become hardened."

The language "within the groove, C, and over the portion, B [the raised portion within the chamber], the plastic cement or composition will extend and will retain in position the pad of cement or composition, K [the brush pad of complainant's patent] containing the bristles when the same has become hardened," shows that Sonn had the idea that some means must be used to retain the brush-pad of composition, holding the bristles, within the chamber or recess which he describes as "a groove, C, in the brush-back." In short, he expressly says that:

"My invention is to provide a new and more effectual means for retaining the cement in the brush-back, and at the same time make the completed brush lighter in weight than has heretofore been accomplished, so far as I am aware, in cement or composition brushes."

To make the brush lighter when of wood he makes the chamber or recess smaller by leaving therein a raised central portion not excavated or cut out, an idea that would occur to any one skilled in the art, and which cannot rise to the dignity of invention. In a metal brush-back such construction would defeat the purpose to make the brush lighter, for metal is heavier than the composition, and therefore the leaving of this raised portion of metal in the chamber to lessen the amount of composition used would make the brush heavier.

Sonn refers to a wood frame only for he says: "The cement or composition is heavier than the wood, which is the material of which the brush-back is usually constructed." To retain the completed and hardened brush-pad containing the bristles within the chamber of a metal frame requires mechanical skill. In the metal back or frame surely it would not adhere. In the wood back or frame it would adhere to an extent. In the complainant's frame of wood actually made and used the undercut is employed, and this makes the aperture into the chamber smaller than the area of the chamber itself, and the overhanging edges of the frame rest upon the edges of and retain the hardened composition or brush-head when unbroken. Sonn dispenses with this manner or form of construction, and substitutes the raised portion in the center of the chamber or recess, to which the plastic material adheres as it hardens, and hence the brush-head is retained by adhesion to it and to the sides and bottom of the chamber. Is this method of holding the brush-pad within the chamber or groove, which is the same thing, the equivalent of the complainant's method of accomplishing that purpose, assuming that complainant's method embraces or includes such a purpose? In describing his method Morrison makes no reference to means for holding or means for retaining the brush-head when hardened in the brush-frame. He refers to the drawings of the metal brush described and illustrated, but says nothing of a contracted opening or aperture into the chamber or recess, and from the specifications describing his method we can only infer he had such an aperture in mind from the use of the words "pushed through the face aperture." From the necessity of pushing the lower projecting ends of the bristles through the face aperture down into the plastic material previously deposited in the chamber through the aperture, we may infer that a contracted aperture, one smaller than the upper surface of the chamber itself, is understood. But is this inference necessary? The claim itself suggests it, for it provides for a "contracted aperture."

The complainant in his brief says:

"It is evident from the language used that there was no intention on the part of the inventor or his attorneys to limit the application of the method any further than was necessary to produce a useful brush; that is, a brush in which the hardened composition, when molded about the bristle tufts within the chamber of the brush-back, would remain there while in use; that is, the aperture of the chambered brush-back must not be so extensive that the bristle pad formed in practicing the method within the brush chamber would fall out without some support other than the walls of the chamber."

Is not this, in effect, a concession that in practicing the method of complainant's patent some means other than the walls of the chamber itself are necessary to retain the brush-pad when formed within the chamber therein. The brief also says:

"It is possible that the adhesion of the composition to the walls of the chamber would be sufficient to retain the composition within the chamber, even if the chamber walls were beveled so as to flare outwardly in a very slight degree, in which case they would perform all the functions of inwardly beveled or undercut walls."

But there is no suggestion of this in the claim or specifications. On the other hand, both suggest a contracted aperture or opening into

the chamber, one smaller than the interior surface thereof, making it impossible for the brush-pad to fall out when hardened.

The complainant argues with some force that the words "having a contracted aperture" serve to distinguish, in terms, the chambered brush-back from the back section of the die, which had been previously employed in the manufacture of composition back brushes. I do not find anything in the claims or specifications that justifies any inference that the words "contracted aperture" were used therein to distinguish the aperture of the chambered brush-back of the patent from the apertures of the dies formerly used in this art. Such dies are not mentioned in the Morrison patent.

But it is contended that the contracted aperture is unnecessary to the invention; that it is an immaterial element, if it may be called that; that the invention of the patent is fundamental or a pioneer; and that defendant cannot, without infringing, appropriate the true invention of the Morrison patent in suit by rejecting or failing to use in his method of construction this contracted aperture or a chambered brush-back or brush-frame which does not have an aperture of lesser area than the surface area of the chamber proper. Complainant contends that practically the elevated portion left in the chamber, and with its sides forming the grooves, is the equivalent of the contracted aperture, giving it the construction claimed by defendants, inasmuch as it serves simply to hold or retain the completed brush-pad within the chamber or grooves.

In Walker on Patents (4th Ed.) § 120, p. 103, it is said:

"In cases where the description relates to a process, the claim should cover all the necessary occurrences in that process, and cover no more. If it covers less, it will be void for want of utility; and if it covers more, it can be evaded by persons who omit any one which is unnecessary when using the others."

This is a process or method for making a brush. The steps are: (1) The depositing of a mass of heated plastic composition within a chambered brush-frame having a contracted aperture; (2) forcing one end of a group of exposed bristle tufts through this aperture and into the composition; (3) at the same time giving form to the face of such composition by mold-pressure; and (4) supporting such bristles in the desired position, projecting out through the face aperture until the composition cools and hardens. Steps 1 and 2 of this process or method are successive, while 3 and 4 take place or are done at the same time as 2, except they continue in operation for a greater length of time. The forcing of the bristles into the composition is done in a moment, while the pressure must continue until the composition hardens. The whole process of making the brush is precisely the same whether the aperture into the chamber be broad and flaring, outwardly-beveled, or contracted as compared with the surface area of the chamber; that is, inwardly-beveled or undercut. The patentee is making a brush, and he not only describes the steps of the operation, but the means or things to be used, acted on, or combined in performing it. Heated plastic composition, not described or limited as to kind, or quality, or ingredients, is

used and deposited. Where? In a chambered brush-frame. This frame is described and limited to one having a "contracted aperture." Also tufts of bristles not described or limited in kind or quality or length. Any bristles formed into tufts will answer the claim of the patent. The means for forcing the bristle tufts through the aperture and into the composition and for applying the mold pressure are neither described nor limited. Any suitable means or mold may be used. Suppose the patent had in the claim itself named a particular kind and quality of composition containing certain specified ingredients, would it infringe to use a compostion of another kind and quality with other ingredients, not equivalents? Or suppose in the claim itself, not the specifications, the patentee had described a particular and peculiar form of mold for giving form to the face of the composition, would it infringe to use some other and different form of mold, giving another and different shape or contour to the face of the brush? The completed brush is composed of a brush-frame of wood or metal or other material, bristles and composition to hold the bristles and tufts of bristles. Certain things, in the method described, are to be done with these substances in a certain order. Necessarily certain tools or appliances will be used in doing these things. The mold pressure may be applied by any suitable instrumentality. This is a mere tool, used in performing the operation, and is of secondary importance. Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139. It is there held:

"A process may be patentable, irrespective of the particular form of the instrumentalities used. If one of the steps of a process be that a certain substance is to be reduced to a powder, it may not be at all material what instrument or machinery is used to effect that object, whether a hammer, a pestle and mortar, or a mill. Either may be pointed out; but, if the patent is not confined to that particular tool or machine, the use of the other would be an infringement, the general process being the same. A process is a mode of treatment of certain materials to produce a given result. It is not an act or series of acts, performed upon the subject-matter, to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable, while the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence."

But the frame and composition and bristles are the substances to be used in putting the method into operation, and if these substances to be used in the process are specifically named and limited to a certain kind and quality, having certain specified ingredients, in the claim itself, there being more than one kind, it would not infringe to use the kind not named, as that kind from which the specified quality and ingredients are absent would not be included in the patented process. Cochrane v. Deener, supra. So here the method claimed consists in doing certain things with certain specific substances, and as a chambered brush-frame having a contracted aperture is one of those substances, this particular kind of a brush-frame is a material element of the method, and is made such by the express and specific language of the patentee. And this is further

emphasized by the claim itself, which requires, as a part of the process to be gone through with, one of the things to be done with these substances, that the "group of exposed bristle tufts" are to be forced through the aperture described. We would hardly speak of forcing anything through an aperture into a recess or chamber of the same precise dimensions and surface area as the aperture itself, unless there was some resistance to be overcome, such as air or water within the chamber to be pressed out, which is not the case here. Of course, there might be the friction upon the sides of the aperture in case the thing to be forced through were of the same size or dimensions of the aperture, but such is not the case here, as the tufts of bristles when in the bristle plate and ready to be put through the aperture and inserted in the plastic composition are held within a smaller area than that of the surface of the chamber. Hence the patentee must have known that there was no necessity for "forcing one end of a group of exposed bristle tufts through the aperture" unless such aperture was either less in area or of the same size as the group of bristles.

I think the complainant's patent a fundamental one, and entitled to a broad construction, and that the complainant is entitled to have applied the doctrine of equivalents. Morrison made a great and an important and useful advance on the prior art. He simplified, hastened, and cheapened the process or method of making brushes, especially in so far as it relates to forming and putting the completed brush-pad in the brush-frame, and this is the most essential and important part of the process. He combined several steps before done separately into one, and defendants have appropriated that method, unless it be in the use of a frame having a contracted aperture. But still the claim of the Morrison patent has this self-imposed limitation, and hence, unless the raised central portion of the chamber of defendants' brush is the equivalent of the "contracted aperture" of complainant's patent, giving these words their proper construction, there is no infringement. It serves the same purpose, but not in the same precise way. It serves, in a wooden-handled or wooden-framed brush, another purpose also, for it lessens the weight of the brush—makes it lighter. But if defendant used complainant's method and all its elements, he cannot escape infringement because his method of making brushes serves another purpose also, or because the substituted equivalent is better and improves the process. Nor can he in such case escape infringement by adding another element, which does not destroy the identity of the two processes. Cochrane v. Deener, 94 U. S. 780–786–787, 24 L. Ed. 139. At page 787 of 94 U. S. and at page 141 of 24 L. Ed., it is said:

"The defendants admit that the process has produced a revolution in the manufacture of flour, but they attribute that revolution to their improvements. It may be, as they say, that it is greatly due to these. But it cannot be seriously denied that Cochrane's invention lies at the bottom of these improvements, is involved in them, and was itself capable of beneficial use, and was put to such use. It had all the elements and circumstances necessary for sustaining the patent, and cannot be appropriated by the defendants, even though supplemented by and enveloped in very important and material improvements of their own."

In National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 45 C. C. A. 544, it was held:

"One who invents and secures a patent for a machine or combination which first performs a useful function is protected thereby against all machines or combinations which perform the same function by equivalent mechanical devices; but one who merely makes and secures a patent for a slight improvement on an old device or combination, which performs the same function before as after the improvement, is protected against those only who use the very device or improvement he describes and claims, or colorable evasions thereof. The term 'mechanical equivalent,' when applied to the interpretation of a pioneer patent, has a broad and generous signification. When applied to a slight and almost immaterial improvement, it has a very narrow and limited meaning. When applied to that great majority of inventions which falls between these two extremes, its significance is proportioned to the character of the advance or invention under consideration, and it is so interpreted by the courts as to protect the inventor against piracy and the public against unauthorized monopoly."

We come then directly to the question whether or not defendant in making brushes uses the whole of complainant's method or process as described in his claim, for, as held in National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 45 C. C. A. 544, while the description in a specification or drawing of the details which are not claimed to be essential elements of the patented device or combination, and are not such, is the mere pointing out of the better method of using it, and does not limit it to those details, "a reference in a claim of a patent to a letter or figure used on the drawing and in the specification to describe a device or an element of a combination does not limit the claim to the specific form of that device or element there shown, unless that particular form was essential to, or embodied the principle of, the improvement claimed." Still it is also true that "the absence from a device that is alleged to infringe a patented combination of a single element of that combination is fatal to the claim of infringement."

Complainant's method for holding the completed and hardened brush-head in place in the chamber of the brush-back or brush-frame is to somewhat contract the upper edges of the frame about the aperture into the chamber, called in the claim the "face aperture." If unbroken the brush-head will not fall out if it becomes wholly detached from the sides and bottom of the chamber, and fails to adhere thereto, for, the aperture being smaller than the brush-head in surface area and both length and width, it is impossible for it to pass through. In the defendants' brush, if the brush-head becomes wholly detached from the sides and bottom of the grooves and the sides and top of the raised portion in the chamber which is surrounded by the grooves, and fails to adhere thereto, it will fall out, for the aperture is no smaller in any of its dimensions than the corresponding dimensions of the brush-pad. But it may be questioned whether the mode or manner of holding and retaining the brush-head within the chamber is made any part of the Morrison method. In describing the method he nowhere refers to this subject. Hence, may not it be held and retained in any known manner or by any known means? Has he limited himself in this respect? In describing his method he does not

mention the office to be performed by the "contracted aperture" mentioned in the claim itself. Is it not as fair and reasonable to infer that in making brushes in which brush-frames of wood are used he intended to rely on the adhesion of the composition to the sides and bottom of the chamber as that he intended to rely on the contracted aperture into it for the purpose of retaining the composition brush-pad therein? I think this is true. But still Morrison has claimed a method in which is used the brush-frame having a contracted aperture only. Hence we are brought back to the question whether or not the defendants use a brush-frame which is the substantial equivalent of complainant's as used in his method. In determining this question it seems to me we are to be guided by the office or function to be performed by the brush-frame in the method pointed out, and not by the shape or contour or size or name of the frame, or even its description. Does it perform the same function, do the same thing, in substantially the same way, and accomplish the same result; that is, to hold or retain the hardened brush-pad in the chamber or recess? The result is the same, the brush-pad is retained by the contracted aperture and adhesion in the Morrison patent and by adhesion in the other. But the holding and retaining is not done in the same way wholly. The substitution of the raised center portion, while it adds to the adhesion surfaces, and in some degree furnishes binding surfaces for that portion of the composition between it and the sides of the chamber, tends to impair the secure and permanent holding of the brush-pad within the chamber, for, as stated, if loosened wholly from the walls and bottom of the chamber and sides and top of the raised portion it will fall out. "There are two tests of equivalency: (1) Identity of function. (2) Substantial identity of way of performing that function." Walker on Patents (4th Ed.) § 362, p. 315. "One thing to be the equivalent of another must perform the same functions as that other. If it performs the same function, the fact that it also performs another function is immaterial to any question of infringement." Walker on Patents (4th Ed.) § 352, p. 309. "The idea covered by the patent must be completely embraced in the idea expressed in the infringement, but the latter may be far more comprehensive than the former." 3 Robinson on Patents, § 893, p. 47.

Here we have the identity of function, and also an additional function performed by the raised portion of defendants' brush-frame which lightens the brush; but, as shown by the authorities cited in Robinson on Patents, supra, this is immaterial. Is there substantial identity in the way of performing the function? On this subject Walker on Patents (4th Ed.) § 362, pp. 315, 316, says:

"The second of these tests is somewhat elastic, because it contains the word 'substantial.' That word is allowed to condone more and more important differences in the case of a primary patent than in the case of a secondary one. In the case of a patent narrowed in construction by an extensive state of the preceding art, the word 'substantial' will give but little elasticity to the application of the doctrine. If fewer inventions preceded the one at bar, the word will have somewhat more of carrying power. When the invention at bar is strictly primary, and especially if it is extremely

useful, then the word 'substantial' will be made to cover differences alike numerous and important, and even highly creditable to the infringer who invented them."

In the complainant's method described in claim 1 the office or function of the contraction in the aperture is not stated. The word is descriptive merely. In the specifications describing the method covered by the claim no office is assigned to this contraction of the aperture. Under general rules of patent law in all combinations of a mechanical patent, every element claimed is conclusively presumed to be material. Shepard v. Carrigan, 116 U. S. 593–598, 6 Sup. Ct. 493, 29 L. Ed. 723; Sargent v. Hall Safe & Lock Co., 114 U. S. 63–86, 5 Sup. Ct. 1021, 29 L. Ed. 67; Yale Lock Manufacturing Co. v. Sargent, 117 U. S. 373–378, 6 Sup. Ct. 931, 29 L. Ed. 950.

I see no reason why this rule should not apply in such a case as this, but still we are not to attach too much importance to the use of that particular word in determining what is a substantial equivalent for the "chambered brush-frame having a contracted aperture"—one of the things to be used in performing the method. Such a brush-frame of various forms was old in the art. In a prior patent to Morrison we find the undercut recess or chamber fully described, and mentioned as "undercut." No novelty is attributed to it in the patent in suit, but the invention resides in the method of putting the bristles into the composition to form the brush-pad, and this into the frame, and there molding and forming it and attaching it to the frame or back—all in one operation. In point of fact, the composition adheres very closely and securely to the sides of the chamber in the wooden frame, and all that was necessary, if necessary at all, and all that was done by defendants to do away with a contraction in the aperture, was to substitute additional binding and adhesive surface to the chamber. This was done by leaving, as stated, the raised portion in the chamber. Otherwise, the brush-frame of wood used by the defendants in performing or putting in operation the method and carrying it on to completion is identical with that used by complainant, and, so far as the method itself used by defendants is concerned, it is identically that described in the patent in suit. True, the defendants claim an inversion of the chambered brush-frame in putting the composition into the recess, and that in their machine or presser used for the purpose they put the composition first onto the ends of the bristles, projecting from the bristle plate, and then bring the two together, and by pressure force the composition and ends of the bristles contained therein into the chamber, and by the continued pressure mold the composition. But this is a distinction without a difference, for, even if this is what defendants do, they have united the several steps of the prior art into one, as did Morrison in the patent in suit before them, and the mode or method by which it is done is substantially that of the complainant. Such a variation in performing or carrying out the method cannot avoid infringement. I think the defendants have copied the principle or mode of operation of Morrison's patent in suit, and have therefore infringed. Winans v. Denmead, 15 How. (U. S.) 330–342, 14 L. Ed. 717; Ives et al. v. Hamilton, 92 U. S. 426, 430,

23 L. Ed. 494; Machine Company v. Murphy, 97 U. S. 120–123, 24 L. Ed. 935; Hoyt v. Horne, 145 U. S. 302, 308, 309, 12 Sup. Ct. 922, 36 L. Ed. 713; Westinghouse v. Boyden Power Brake Co., 170 U. S. 568, 18 Sup. Ct. 707, 42 L. Ed. 1136; Columbia Wire Co. v. Kokomo Steel & Wire Co. (C. C. A.) 143 Fed. 116, 122. In Westinghouse v. Boyden Power Brake Co., supra, the Supreme Court (page 568 of 170 U. S., at page 722 of 18 Sup. Ct., 42 L. Ed. 1136), said: "We have repeatedly held that a charge of infringement is sometimes made out though the letter of the claims be avoided."

In Columbia Wire Co. v. Kokomo Steel & Wire Co., supra, the claims of the patent are found at page 119 of 143 Fed. Some of the things claimed were absent. Some in the form specifically described in the claims were absent and others substituted, but the court said:

"We are of opinion that the means thus transposed in the appellee's machine, if not within the definition of colorable evasions which infringe the patent in any view of its scope, are plain appropriations of the essence of the Bates conception by equivalent means, and infringements of the patent within the well-settled rule referred to. All the elements of the patent combination are employed with substantial identity in their use, and departure appears from the letter of the claims only, in the arrangement of these elements, without substantial difference in the principle of operation. The policy and rules of the patent law require that the patentee be protected against such evasions of the wording of a claim in form or nonessential details, when the substance of the invention is thus used, and is unmistakably shown in the specifications and claims."

In Winans v. Denmead, 15 How. (U. S.) 342, 14 L. Ed. 722, the claims of the patent read as follows:

"What I claim as my invention, and desire to secure by letters patent, is making the body of a car for the transportation of coal, etc., in the form of a frustum of a cone, substantially as herein described, whereby the force exerted by the weight of the load presses equally in all directions, and does not tend to change the form thereof, so that every part resists its equal proportion, and by which, also, the lower part is so reduced as to pass down within the truck frame and between the axles, to lower the center of gravity of the load without diminishing the capacity of the car, as described. I also claim extending the body of the car below the connecting pieces of the truck frame, and the line of draft, by passing the connecting bars of the truck frame and the draft bar, through the body of the car, substantially as described."

The patentee expressly claimed the "making the body of a car for the transportation of coal in the form of a frustum of a cone," etc. The defendants made theirs in an octagonal form. The court held, reversing the court below, that defendants infringed, and said:

"It is generally true, when a patentee describes a machine, and then claims it as described, that he is understood to intend to claim, and does by law actually cover, not only the precise forms he has described, but all other forms which embody his invention; it being a familiar rule that to copy the principle or mode of operation described is an infringement, although such copy should be totally unlike the original in form or proportions. * * * The reason why such a patent covers only one geometrical form is not that the patentee has described and claimed that form only; it is because that form only is capable of embodying his invention, and, consequently, if the form is not copied, the invention is not used. Where form and substance are inseparable, it is enough to look at the form only. Where they are separable—where the whole substance of the invention may be copied in a dif-

ferent form—it is the duty of courts and juries to look through the form for the substance of the invention—for that which entitled the inventor to his patent, and which the patent was designed to secure. Where that is found, there is an infringement; and it is not a defense that it is embodied in a form not described, and in terms claimed by the patentee."

In Ives et al. v. Hamilton, supra, it was held:

"Where an improvement in sawmills, for which letters patent were issued, consists of the combination of the saw with a pair of curved guides at the upper end of the saw, and a lever, connecting rod, or pitman, straight guides, pivoted cross-head, and slides or blocks and crank-pin, or their equivalents, at the opposite end, whereby the toothed edge of the saw is caused to move unequally forward and backward at its two ends while cutting. The claim is, 'giving to the saw in its downward movement a rocking or rolling motion by means of the combination of the cross-head working in the curved guides at the upper end of the saw, the lower end of which is attached to a cross-head, working in straight guides and pivoted to the pitman below the saw, with the crank-pin substantially as described,' the use by another party of guides consisting of two straight lines representing two consecutive cords of the curve of the guides of the patentee, and arranged in other respects in the same manner as this curve, is clearly the employment of a mechanical equivalent, and is an infringement of the patent."

Here the claim was for curved guides, and they were not used.
In Machine Co. v. Murphy, supra, the court said:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue; the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result. Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained."

See, also, Tilghman v. Proctor, 102 U. S. 730–731, 26 L. Ed. 279.

I think that defendants have copied and used complainant's method as described in claim 1, and that in so far as there is a change of a thing used in carrying the method into effect the defendants use a substantial equivalent.

I have carefully examined the question of prior use, reading all the evidence, and find that defense is not sustained.

Decree for complainant.